UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRADY L. BURLEW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:20-cv-01656-JMS-TAB |
| | ) |
| BOLDMEN Capt., P.C.F., in his own individual and official capacity, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING AMENDED MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Brady Burlew brings this action alleging that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was transferred to a prison cell with no electricity at Pendleton Correctional Facility ("PCF") for eleven days. The defendant has filed an amended motion for summary judgment, arguing that the action should be dismissed because Mr. Burlew did not exhaust his administrative remedies. For the reasons explained below, the motion for summary judgment is **granted**.

**I.
SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in

the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## II.
## BACKGROUND

Mr. Burlew alleges that on or about April 11, 2020, defendant Captain Boldmen transferred Mr. Burlew to a prison cell with no electricity where he remained for eleven days. Dkt. 8 at 2.

The Indiana Department of Correction ("IDOC") has an Offender Grievance Process ("Grievance Process") that provides offenders with an opportunity to attempt to resolve grievances before filing suit in federal court. Dkt. 24-1 at ¶ 5. The Grievance Process in place during the relevant period is the Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective April 1, 2020. *Id.* at ¶¶ 9–10, dkt. 24-2 at 1. Offenders receive documentation on the Grievance Process during orientation, and a copy of the grievance policy is available in the PCF law library. Dkt. 24-1 at ¶¶ 20–22.

The Grievance Process consists of the following steps: (1) a formal attempt to resolve a problem or concern following an unsuccessful attempt at an informal resolution; (2) a written appeal to the facility Warden or the Warden's designee; and (3) a written appeal to the IDOC Grievance Manager. *Id.* at ¶¶ 12–18. Exhaustion of administrative remedies requires offenders to timely complete each step of the Grievance Process. *Id.* at ¶ 13. Relevant here, an offender has five business days in which to submit an appeal if he is dissatisfied with the grievance response. *Id.* at ¶ 17. Further, the grievance specialist "shall record the date they received the appeal, forwarded the appeal to the office of the Warden, and generate a receipt for the appeal and forward a copy to the offender." Dkt. 24-2 at 12.

Christina Conyers is the grievance specialist at PCF. *Id.* at ¶ 2. She oversees the grievance process and is also the custodian of the grievance records at PCF. *Id.* at ¶ 3. Ms. Conyers has

reviewed Mr. Burlew's relevant grievance records to determine whether he complied with the Grievance Process. *Id.* at ¶ 25. Based on Ms. Conyers's review of Mr. Burlew's grievance records, Mr. Burlew did not comply with the grievance process because he did not submit any accepted formal grievance appeals related to his conditions-of-confinement claim. *Id.* at ¶ 26.

On April 27, 2020, Mr. Burlew submitted a formal grievance complaining about his April 11 cell transfer, which was received and logged on April 28. *Id.* at ¶ 27. On May 11, 2020, Ms. Conyers rejected the grievance submission, stating,

> [According to] Capt. Mason: This cell 9-4D is a safe cell with no power turned on. This cell was ordered by Mr. Alsip to be stripped of power and used to deter offenders from setting fires, etc. …This is not a condemned cell.
>
> Based on this information, your grievance is DENIED. For additional instructions and/or information regarding grievances, please refer to Policy 00-02-301.

Dkt. 24-4 at 1.

Mr. Burlew filed a duplicate of his April 27, 2020, grievance[1] on May 15, 2020, but Ms. Conyers returned it on May 18, 2020, stating, "This issue has been addressed in grievance #113295." Dkt. 24-4 at 7.

Because Mr. Burlew had five business days to submit a timely appeal, his appeal was due by May 18, 2020. Dkt. 24-1 at ¶ 29. However, Mr. Burlew only attempted to submit a formal grievance appeal on June 3, 3030, more than two weeks late. *Id.* at ¶ 30; dkt. 24-4 at 6. In the appeal, he stated in part, "I must exhaust my administrative remedies and I have not receive[d] a receipt for my response and log number so I am putting your response with a log number with this appeal to exhaust this proceedings." Dkt. 24-4 at 6. Ms. Conyers returned Mr. Burlew's grievance

---

[1] The second grievance was not included in the defendant's exhibits, but it was attached as an exhibit to Mr. Burlew's complaint. Dkt. 2-1 at 2. The two grievances are identical except one is stamped "RECEIVED April 24 2020", dkt. 24-2, and the other is stamped, "RECEIVED May 15 2020," dkt. 2-1 at 2.

appeal attempt to him on June 12, 2020, advising him it was rejected because it was filed too late. Dkt. 24-1 at ¶ 31; dkt. 24-4 at 5.

Mr. Burlew does not dispute that he submitted his grievance on April 26, 2020, that Ms. Conyers accepted his grievance and responded to it on May 11, 2020, and that he tried to file his appeal on June 3, 2020, which was rejected for being untimely. Dkt. 22 at ¶¶ 4–9. He alleges that because Ms. Conyers rejected his appeal for being late, he was unable to appeal to the warden. *Id.* at ¶ 11. He states, "Ms. Conyers mishandled my grievances and rendered the [offender grievance process] 'so opaque that it became, practically speaking, incapable of use.' And any administrative relief that I did not pursue was not actually available to me." *Id.* at ¶ 12.

## III.
## DISCUSSION

The substantive law applicable to this motion for summary judgment is the Prison Litigation Reform Act ("PLRA"), which provides, "No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo v. McCaughtry,* 286

4

F.3d 1022, 1025 (7th Cir. 2002).; *see also Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). Exhaustion is an affirmative defense, and the defendant bears the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before he filed this suit. *Kaba v. Stepp*, 458 F.3d 678, 680-81 (7th Cir. 2006).

While a prisoner "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, and 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Mr. Burlew failed to complete the grievance process. After Ms. Conyers denied his grievance, he tried to file an appeal, but it was rejected because he filed it over two weeks late. Because Mr. Burlew's appeal was rejected as untimely, he was not able to complete the grievance process through the steps mandated by IDOC's Grievance Process.

Mr. Burlew[2] argues that Ms. Conyers's rejection of his appeal as untimely rendered the grievance process so opaque that it was incapable of use. He does not explain how her rejection of his appeal as untimely rendered the process opaque; rather, Ms. Conyers was simply following the Grievance Process which set clear deadlines for each step.

Mr. Burlew stated in his appeal form, "I must exhaust my administrative remedies and I have not receive[d] a receipt for my response and log number so I am putting your response with

---

[2] The defendant argues in part that the Court should disregard Mr. Burlew's response because, by filing only an affidavit and exhibits, he failed to comply with Local Rule 56-1(e) which requires "[a] party [to] support each fact the party asserts in a *brief* with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." (emphasis added). While it is "well established that pro se litigants are not excused from compliance with procedural rules," *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008), whether the Court holds pro se litigants to the consequences of violating the Court's Local Rules is a matter of discretion, *Gray v. Hardy*, 826 F.3d 1000, 1004-05 (7th Cir. 2016). Here, the Court chooses to take "a more flexible approach," *id.*, and will consider Mr. Burlew's affidavit and exhibits.

a log number with this appeal to exhaust this proceedings." Dkt. 24-4 at 6. This statement could be interpreted to assert that he tried to submit an appeal earlier and never received a receipt. But Mr. Burlew makes no argument that he tried to submit an appeal earlier. *See* dkt. 22 at ¶ 6 ("As the third step Mr. Burlew presented a written appeal to the warden/designee on June 3. 2020."). Thus, there is no evidence that the Grievance Process was unavailable to Mr. Burlew.

The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that the action should not have been brought and must now be **dismissed without prejudice**. *Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## IV.
## CONCLUSION

For the reasons explained above, the defendant's amended motion for summary judgment, dkt. [23], is **granted**, and the action is **dismissed without prejudice**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 2/18/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

BRADY L. BURLEW
201655
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Thomas Joseph Flynn
INDIANA ATTORNEY GENERAL
tom.flynn@atg.in.gov

Archer Riddick Randall Rose
INDIANA ATTORNEY GENERAL
archer.rose@atg.in.gov